UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF OHIO

FILED
2018 NOV 28 AM 9:52
U.S. DISTRICT COURT
N. DISTRICT OF OHIO
CLEVELAND

BISMILLAH /aka/
PHILLIP DOUGLAS JACOBS
    PLAINTIFF,

v.

BUREAU OF MEDICAL SERVICES (BOMS)
OHIO DEPARTMENT OF REHABILITATION
AND CORRECTION, et al.,
GARY C. MOHR, (Director) or/
(Substitute)) et al., and
Dr. Eddy, et al., Stuart Hudson,
et al., Dr. Granson, et al., (BOMS)
Capt. Banardo, et. al., Lt. Williams,
et al., K. NOLAN, et al.,
LYNEAL WAINWRIGHT, (Warden) at the
Marion Correctional Institution.

    DEFENDANTS.

CASE NO.
3:18 CV 2741
JUDGE

CIVIL COMPLAINT
42 U.S.C. §1983

JUDGE ZOUHARY

MAG. JUDGE JAMES R. KNEPP II

1. Previous Lawsuits

    A. Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment? YES X     NO

    B. If your answer to A is yes, describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

    1. Parties to this previous lawsuit:

    Plaintiffs  Jacobs v. Gary C. Mohr, 3:16 CV 1374 (N.D. Ohio-Western Division).

    Defendants  GARY C. Mohr, et al.,

    2. Court (if federal court, name the district; if state court, name the county):

    3. NorthernDistrict of Ohio   <u>Docket Number 3:16-CV-1374</u>

    4. Name of judge to whom case was assigned: <u>Judge Helmick</u>.

    5. Disposition: Case is still pending.

    6. Approximate date of filing lawsuit: <u>June 6, 2016</u>.

11. Place of Present Confinement: <u>**Marion Correctional Institution. Marion, Ohio.**</u>

    A. Is there a prison grievance procedure in this institution? YES

    <u>Grievanecs are attached to this complaint.</u>

<u>Results:</u>

    B. <u>Defendants still denied the prescribed treatment plan and regimentation of medications (Plavis 75 mg.)as initially prescribed by heart specialist at Ohio State University Hospital</u>.

## SUBSEQUENT FACTUAL SETTING ADOPTED

Plaintiff adopts by reference the complete set of facts following, and incorporates the same, as if fully rewritten herewith, and states that he has repeatedly demonstrated that the threat and /or prison conditions he is under, are real and proximate. And that the repeated occurrences of obstruction, interference with, and /or stoppaged of the treatment and regimentation as directed by **heart-specialists**, is enough, that reasonable inferences can be drawn, that [the] danger exist. **<u>Vandiver v. Prison Health Servs., Inc.,</u>** 727 F.3d 580, (6th Cir. 2013 ).

## STATEMENT OF THE FACTS

1. Plaintiff alleges that in furtherance of other pre-planned arbitrary misconduct and activities, that defendants while acting under color of law, repeated, those instances of unlawful and unconstitutional misconduct.

2. Plaintiff alleges that the named defendants (Gray C. Mohr, Director, Stuart Hudson, Dr. Eddy, Dr. Granson, Lyneal Wainwright (Warden) at the Marion Correctional Institution, where plaintiff is housed, Capt. Banardo (3d Shift) and Lt. Williams (3d Shift) while acting in combination with Correctional Officer K. Nolan (3d Shift), in furtherance of other acts of medical deliberate indifference involving plaintiff's serious medical illnesses and needs, acted in concert with the design and plan to intentionally deprive plaintiff of life, liberty and property. In a repeated and continuing manner, consistent with all other pre-planned arbitrary designed activities.

3. Plaintiff alleges that each of the defendants named acted in concert with a concerted plan and effort to intentionally deprive plaintiff of life, liberty and property, which consisted of a deliberate plan to interfere with and or discontinue plaintiff's regimentation of heart-medication (specifically, Plavix 75, mg. in combination with Aspirin 81 mg.), as prescribed by heart-specialist, at the Ohio State University Hospital.

4. Plaintiff asserts Stuart Hudson and Dr. Eddy, interferred with and discontinued his heart medications regimentation (Plavix 75 mg). **While acting as Directors of Bureau of Medical Services.**

5. He alleges that the discontinuance of Plavix 75 mg. as was prescribed to be taken in combination with the 81 mg. Aspirin, served to set the course for several adverse consequences, that would induce "blood-clot retraction" composing a compact mass (Blood-Clot Formation in Plaintiff's Heart).

6. He asserts that each of the named defendants had knowledge of the consequences he would suffer, and intentionally stopped the order for his Plavix 75 mg. medication.

7. Plaintiff further alleges that defendants Mohr, Hudson, Dr. Eddy, Dr. Granson and Dr Lyons were directly responsible for the (deliberate indifference-violations, leading to his most recent treatment for triple-blockages in his heart, and months of severe pain and suffering that were caused),

blood-clotting in his heart, because those defendants stopped the Plavix 75 mg. medication, which had been prescribed as a compound acting suppressant. And refused further consideration for prevention.

8. Plaintiff in furtherance asserts that the same defendants used their medical expertise arbitrarily, for the purpose of ordering blood test on the plaintiff, to observe the blood changes over into a compact mass. (Blood Clot Formation).

9. Plaintiff's blood test showed he was nearing the compact mass stage, as in most cases the stage is one of developement.

10. Plaintiff alleges that the named defendants herein, are directly responsible for " extrinsic" series reaction.

11. Plaintiff then alleges that defendants communicated with each other, concerning timing of compact mass, and the need for having plaintiff removed from general population, so that he was isolated during the on coming developements compact mass. Which defendants were able to determine within a reasonable period to come. From time to time regular blood test were conducted.

12. On September 29, 2018, defendants operating in combination then relied upon K. Nolan (3d Shift Correctional Officer), who would contact Capt. Banardo and Lt. Williams to have plaintiff placed in solitary confinement. He remained there until October 3/18.

13. The order for lock-up simply stated "transfer to O-Block."

14. Plaintiff was not charged with doing anything wrong, nor had he done anything wrong . He was simply being placed in solitary confinement to isolate him in his planned death.

15. K. Nolan proceeded to ransack plaintiff's personal properties, destroying as much as she reasonably could of identifcations and other items. "Contraband" even with years of ownership.

16. Plaintiff had already informed Capt. Banardo and Lt. Williams of him having chest pains, and requested to be handcuffed in front, so that he could reached his nitro.

17. Plaintiff was kept in solitary confinement for over three days before he was rushed out to the out-side hospital (Marion General And Ohio State University Hospital). Heart Specialists at the Ohio State University . Hospital stated that plaintff had triple-blockages in his heart. He under went procedures and had two-stent implacements. Plaintiff now has 20 stents in his heart.

Phone discussions went on for nearly three (3) hours, with BOMS Officials (DR. Granson, Dr. Eddy and Nurses) before plaintiff was rushed out by life-squad, to out-side Hospitals.

18. Plaintiff also was informed by heart specialist, that his most recent triple-blockages, (October 2018), were caused by the Plavix 75 mg. medication being stopped from use as a compound with the Asprin 81 mg. BOMS-stopped order for plavix. (2016).*

19. As of October 2018, heart-specialists at Ohio State University Hospital, have reordered plaintiff's Plavix 75 mg. and Aspirin 81 mg. compound regimentation.

20. He alleges that he under went long periods of severe pain and suffering, before having the blockages removed.

21. Plaintiff alleges that upon his release from solitary confinement he was never given any conduct report or other sanction. His ultimate release was around October 18, 2018.

22. He alleges the sole purpose of him being placed in isolation was to isolate him with the circumstances of his blockages so that it would be more difficult for him to obtain help (as it did take several days before he was taken to an outside hospital ), and also to conceal his pains and suffering, as well as the threat to his life.

23. He asserts that all actions, circumstances and property confiscations and destructions of properties were carefully planned and executed to obtain maximum stress and aggravation effects, to enhance the chance of inducing a heart-attack or stroke, since blood test results were already in the hands of defendants. With them making every attempt to trigger other events outside of the developement of known coagulation or platelet plugs, and blood clotting(s).

24. Plaintiff alleges that all defendants named herein, acted with reckless disregard, for his well being and health, and/ or subjected him to a substantial risk of serious injury or harm, or loss of life. Of which all knew /or should have known.[1]

25. He further asserts that Lyneal Wainwright, Warden), fail to act when she had actual or constructive knowledge that plaintiff was being placed in solitary confinement.

26. Plaintiff alleges that his placement in isolation was in violation of prison rules and policy, and that under the circumstances, constituted an intentional act and deprivation.

---

*BUREAU OF MEDICAL SERVICES (BOMS).

1-Buckeye Unit Staff(James Ferguson, Sgt. Griffth and K. Camburn)

## FURTHER EFFORTS TO CONCEAL UNLAWFUL CONDUCT

Plaintiff adopts by reference the complete set of facts related to the cricumstances and events herein, and in furtherance incorporates those facts herewith, as if they were fully rewritten.

He in addition asserts that defendants resorted to tactics of concealment and obstruction, by using Thomas King (Librarian), to prevent plaintiff from using the institution Law Library, and other services.

On November 4, 2018, Thomas King, acting in furtherance of other malicious, and arbitrary designed misconduct, planned to deprive plaintiff of Life, Liberty and property, without due process of Law. Deprived plaintiff of services in the Law Library by, giving plaintiff a direct-order to stop using the copier.

The following day, November 5, 2018, plaintiff returned to the Law Library, to complete copying of this litigation. And was met at the door of the Library by Thomas King. Who turned and looked at plaintiff with deep hate and a glare, and stated " You need to leave !!! He (King) then shouted "  You need to leave, Now!!! "  This was another direct order given by Thomas King, that resulted in plaintiff being denied an opportunity to prepare this litigation, against other prison employees, that shared the same interests and goal. Which included King's part in covering-up other defendants plot to cause and conceal plaintiff's death.

Plaintiff seek injunctive relief in the form of Ordering KING to allow plaintiff to use the Law Library and Services.

He sseks compensatory damages against THOMAS KING.

He seeks punitive damages against THOMAS KING, FOR DISREGARD OF PLAINTIFF'S RIGHT TO PETITION THE COURTS, AND FOR MALICIOUS CONSPIRACY.

Plaintiff seeks relief in the form of preventing activities that would allow similar misconduct (i.e. confiscation of typewriter, prevention of an area to use typewriter) as was the case with Sgt. Wendy Griffth, K. Camburn and James Ferguson, to operate collectively with that of Thomas King, barring of use of the Law Library.

## CLAIMS

PLAINTIFF ALLEGES THAT HE IS IN IMMINENT DANGER OF SERIOUS PHYSICAL INJURY, HARM OR DEATH. AND OTHER ADVERSE ACTIONS.

HE ALLEGES THAT RETALIATIONS ARE BEING TAKEN AGAINST HIM FOR PREVIOUSLY FILED LITIGATIONS.

### CLAIM II.

PLAINTIFF ALLEGES THAT THE NAMED DEFENDANTS IN THIS ACTION ENTERED INTO DESIGN, PLAN AND PLOT, IN COMBINATION TO DEPRIVED PLAINTIFF OF LIFE, LIBERTY AND PROPERTY WITHOUT DUE PROCESS OF LAW AND THAT THEIR ACTIONS/ WERE INTENTIONAL. AND IN ADDITION, TO ORDER REVOKING PAUPER STATUS ( 9/24/2018).

### CLAIM III.

Plaintiff alleges that defendants acted with deliberate indifference to his serious medical illnesses, his needs, and in furtherance, to the directions and treatment-plan prescribed by heart specialists at Ohio State University Hospital. As is shown in Attached DRC 4428, DECISION OF THE CHIEF INSPECTOR, Pages 1 of 3 and 1 of 4.

### CLAIM IV

He alleges that the actions of defendants which consisted of them interferring with the treatment plan, or the intentional discontinuance of prescribed medication compounds (Plavix 75 mg. and Aspirin 81 mg.), intentionally subjected plaintiff to the "unnecessary and wanton infliction of pain." And that there is shown a "'sufficiently cupable state of mind,'" as related to each defendant named.

### CLAIM V

Plaintiff asserts that where defendants resort to intentional plan and design, for manipulating and /or altering of the intended purpose of , prescribed compound medical treatment, subsequent to clearly established medical expertise diagnosis, treatment plan, and reasonable measure of doseages of the prescribed medications to control the substantial risk of serious harm, injury, or life threatening circumstances. Defendants obstruction of that course of treatment, constituted deliberate indifference. Subjecting plaintiff to a 13-day stay, in Ohio State University Hospital.

### CLAIM VI

Plaintiff in furtherance alleges that defendants have been or have acted prevously with reskless disregard and /or deliberate indifference to his serious medical needs.

## CLAIM VII

Plaintiff alleges that defendants placement of him in seclusion or isolation, for the sole purpose of isolating him, his suffering with severe pain, chest pains, and to conceal the threat of harm or injury, which were life threatening, violated due process of law, as no other cause was or could be related to plaintiff being placed in isolation, in violation of prison rules and policies. Plaintiff had been in isolation, suffering pain with triple-blockages in his heart, from 9/29/18 until 10/3/ 2018.

## CLAIM VIII

He alleges that Correctional Officer K. Nolan, acted in furtherance of an already established design and plan, to have plaintiff placed in solitary confinement, to conceal his whereabouts, under a life threatening pre-designed, implemented set of circumstances, which were carried out, without classification consideration, hearing, notice, or consent. Which plan, in furtherance enlisted Nolan's involvement in contacting Capt. Banardo and Lt. Williams, for the purpose of having the plaintiff placed in isolation or solitary confinement, in violation of plaintiff's protected liberty interest.

## CLAIM IX

**Plaintiff** alleges that K. Nolan, Capt. Banardo and Lt. Williams, violated Ohio Prison Rules, Regulations and Policy which create liberty interest, that are protected by the Due Process Clause. In furtherance of their part in a unlawful plan to isolate plaintiff under life threatening circumstances.

## CLAIM X

Plaintiff asserts that the resulting claims and factual circumstances, derive from previous disregard, which fail to address similar claims raised, contrary to the administration of Justice.

DATED: October 23, 2018

Submitted under penalty of perjury. 28 U.S.C. §1746.

BISMILLAH /aka/
Phillip Douglas Jacobs
#185-106

### RELIEF REQUESTED

1. Plaintiff seeks an immediate preliminary restraining order against all defendants named in this action.

2. Plaintiff seeks compensatory damages. Amounting to $80,000,000. (million dollars).

3. Plaintiff seeks punitive damages. (From defendants K. Nolan, Dr. Eddy, Dr. Granson, Stuart Hudson, Gary C. Mohr).

4. Plaintiff seeks emotional damages, of 2 million dollars.

5. He seeks damages for severe pain and suffering, feeling of injust treatment and stress. In the amount of 3 million dollars.

6. Plaintiff seeks to have the instant action and parties investigated for further action by the United States Justice Department under 18 U.S.C. §242. Since the same or similar conduct and activities have and continue to take place.

7. Plaintiff seeks to have a declaratory Order entered, that defendants have violated plaintiff's Eighth Amendment rights, subjecting him to cruel and unusual punishment.

8. Plaintiff seeks a specific restraining order against prison officials at the Marion Correctional Institution, preventing them from further action/ or inactions that may or could result in harming the plaintiff. Or other resulting ADVERSE ACTIONS.

Plaintiff seeks to prevent defendants from exercising a policy of discretion used to obstruct the treament-regimentation course. Ordered by heart specialists at Ohio State University Hospital.

Plaintiff seeks fees for costs, and Attorney Fees, and out-of-pocket expenses.

Plaintiff seeks damages for reckless disregard, intentional and malicious misconduct and activities. Under his claim of entitlement to punitive damages. In the amount of $20 million dollars.

DATED: OCTOBER 23, 2018.

I declare under penalty of perjury, that the statement made herein, are true and correct. 28 UU.S.C. §1746.

BISMILLAH /aka/
Phillip Douglas Jacobs
185-106
MARION Correctional Institutional
POST OFFICE BOX 57
MARION, OHIO 43301